# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01288-COA

**KIMBERLY N. BRITT**                                          **APPELLANT**

**v.**

**DEBORAH CARROLL HOLLOWAY,**                                          **APPELLEE**
**INDIVIDUALLY AND AS NEXT FRIEND OF**
**THE MINOR CHILD, C.B.**

DATE OF JUDGMENT:              05/08/2017
TRIAL JUDGE:                   HON. C. MICHAEL MALSKI
COURT FROM WHICH APPEALED:     LEE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        CHEREKA LAVO WITHERSPOON
ATTORNEY FOR APPELLEE:         CHRISTOPHER G. EVANS
NATURE OF THE CASE:            CIVIL - CUSTODY
DISPOSITION:                   APPEAL DISMISSED - 01/15/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**BARNES, P.J., FOR THE COURT:**

¶1.     Kimberly Britt appeals the Lee County Chancery Court's order awarding custody of her minor child to Deborah Holloway, Britt's mother and the child's maternal grandmother. Alternatively, Britt argues that she should have been awarded unsupervised visitation with the child. As the chancery court failed to rule on the issue of child support in its order, we find the order was not an appealable final judgment. Therefore, the appeal is dismissed for lack of jurisdiction.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.    Britt gave birth to a son, C.B., in May 2016.[1] Britt and the child's father, Jessie Pitts, were never married, and she lived with her mother, Holloway, for a couple of weeks after the birth. When C.B. was approximately six weeks old, Britt moved into a vacant home owned by her great-grandmother.

¶3.    On August 9, 2016, Holloway petitioned the chancery court for custody of C.B., with Pitts joining in the petition. Holloway alleged that Britt was unfit to have custody due to a history of mental illness and drug abuse, a felony drug conviction for the sale of narcotics, a history of sexual relationships with multiple men, sickness from Hepatitis C, and, in general, a lack of basic maternal instinct. Britt had previously relinquished her parental rights to her two other children, and Holloway adopted them.[2]

¶4.    A temporary hearing was held August 10, and the chancery court granted Holloway temporary custody. The matter was set for review on August 24. Britt and Holloway entered into an agreed order allowing Holloway to retain temporary custody, and Britt was granted supervised visitation twice a week for two hours. Originally, Britt's maternal grandmother, Linda Shirley, supervised the visits but was reluctant to continue because Britt spoke profanely about Holloway; so the Mississippi Department of Child Protective Services office (DCPS) in Tupelo assigned a caseworker supervise the visits. A guardian ad litem was also appointed.

---

[1] We use initials to protect the privacy of the minor involved in this case.

[2] The other children (ages thirteen and ten) have two different fathers who have surrendered their parental rights to the children.

¶5. A trial on the merits was held February 6 and March 30, 2017. Shirley testified that when Britt was a child, she would fight with other kids and that Britt had gotten into trouble with law enforcement as a juvenile. Britt would also "get drunk and run off," and she had threatened to kill herself "[m]any times." Within the last year, Shirley also heard Britt threaten to kill Holloway if she lost custody.

¶6. Holloway testified that Britt suffered from mental issues and demonstrated a propensity for mean behavior even as a child, noting that Britt intentionally broke the legs of the family's pet rabbits and had threatened other children at school. She also stated that, since age nine, Britt was treated at various times throughout her childhood at a mental health facility. Both Shirley and Holloway testified that a few years ago, Britt admitted that she had beaten a girl with a flashlight and her fists, while her friends held the girl down. Holloway also testified that Britt smoked marijuana while pregnant with C.B. and was convicted of selling narcotics years earlier.

¶7. Pitts, who admitted during testimony that he had a six-count indictment pending against him for sexual battery of a minor, lived with Britt for a short period after C.B.'s birth and was still seeing Britt on occasion. Pitts claimed that Britt cut herself on her legs because she was upset over the custody issue, and he acknowledged that he heard Britt say she wished Holloway was dead. Regarding Britt's capabilities as a parent, he said: "I just have some concerns as far as mental wise that I'd like, you know, I'd like to feel safer about before [C.B.] goes over there."

3

¶8.    The caseworker for DCPS testified that Britt took a hair-follicle test on March 17 and tested positive for marijuana; a urine test on March 10 was negative.  The guardian ad litem's report also indicated that Britt tested positive for marijuana on October 10, 2016.  The report noted that Britt was a convicted felon with various mental issues.  The report recommended that Holloway be given custody based on these factors.

¶9.    Britt said that she had been diagnosed with "[a]nxiety disorder and adult ADHD" and admitted that she had a nervous breakdown in 2014.  Britt also confirmed she was convicted in 2009 of three counts of selling a Schedule II narcotic and sentenced to eighty-six years suspended, five years of probation, and one year of house arrest.  She said she had completed her house arrest and probation.  Britt admitted that she had threatened in the past to kill both her mother and her mother's attorney.  When asked by her own attorney if she had been "charged" with the "flashlight assault" years earlier, Britt simply replied that she "never caught it.  Never got charged or nothing."   She was not asked if she committed the assault. With regard to drug use, Britt claimed she did not smoke marijuana while the child was present.

¶10.    In its May 8, 2017 order, the chancery court found that the "natural parent presumption" was rebutted due to Britt's illegal drug use, history of mental-health issues and unstable personality, prior criminal activity, and the inability to support herself and C.B. on her income.  Permanent legal and physical custody of C.B. was awarded to Holloway, with Britt being granted supervised visitation once a week not to exceed two hours per visit.  Britt

4

filed a motion for reconsideration, which the court denied. She now appeals the chancery court's ruling.

**DISCUSSION**

¶11. In its "Memorandum Opinion and Judgment," the chancery court adjudged Britt to be unfit to have custody and ordered weekly supervised visitation with the child. Britt raises two issues on appeal: whether the court erred in finding the natural-parent presumption was rebutted and in restricting her visitation with her son without a showing she posed a risk of harm to the child.

¶12. However, the court held "the issue of child support to be paid by [Pitts] and [Britt] in abeyance," stating that Holloway could "request the [c]ourt to hold a review hearing on the issue of child support after six months." In her complaint, Holloway had requested child support and maintenance. Neither party has raised the issue, but "this Court is required to note its own lack of jurisdiction." *Walters v. Walters*, 956 So. 2d 1050, 1053 (¶8) (Miss. Ct. App. 2007).

¶13. Although the chancery court's opinion was "adopted as the judgment of the Court," the court did not certify the judgment as final under Mississippi Rule of Civil Procedure 54(b). In *S.E.B. v. R.E.B.*, 67 So. 3d 14 (Miss. Ct. App. 2011), this Court addressed a similar situation. Granting the parties a divorce, the chancery court ruled on the issues of custody and the equitable distribution of marital assets, but as to the issue of child support, the court held: "Due to [Sara's] not being employed at this time, the issue of child support will not be

5

ruled on until such time the future as the [c]ourt deems proper." *Id*. at 16 (¶8). We

concluded:

> Because the chancellor did not make a 'definite, unmistakable' ruling on the parties' request for child support, the judgment is not final, but interlocutory; thus, it was not appealable. Nor was the judgment certified as a final judgment under Rule 54(b). Therefore, we must dismiss this appeal for lack of jurisdiction.

*Id*. at 17 (¶13); *see also M.W.F. v. D.D.F.*, 926 So. 2d 897, 899-900 (¶¶3-5) (Miss. 2006)

(holding that because the chancery court's order only resolved the parties' divorce claim and

held other matters in abeyance, the court's order was not a final, appealable judgment).

¶14. Therefore, absent a "definitive, unmistakable" ruling by the court on the issue of child

support or a certified Rule 54(b) judgment, the chancery court's order is not a final,

appealable judgment conferring jurisdiction to this Court.

¶15. **APPEAL DISMISSED.**

**GRIFFIS, C.J., WILSON, WESTBROOKS AND TINDELL, JJ., CONCUR. CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McDONALD, LAWRENCE AND McCARTY, JJ., NOT PARTICIPATING.**